UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ONEBEACON AMERICA INSURANCE
CO., *et al.*,

        Plaintiffs

v.                                Case No. C-1-07-358

SAFECO INSURANCE CO., *et al.*,

        Defendants

## **ORDER**

This matter is before the Court upon Plaintiff's motion to disqualify counsel for Defendant Kramig, with supporting documentation filed under seal (Docs. 9, 10); Defendant Kramig's original memorandum in opposition thereto (Doc. 17); and Plaintiff's original reply memorandum, with supporting documentation filed under seal. (Docs. 21, 22). Following a hearing and upon order of this Court (*see* Doc. 33), the parties also filed supplemental memoranda regarding certain issues raised by the disqualification motion (Docs. 35, 37, 39), and appeared for a second hearing (*see* Doc. 41).

**Procedural History/The Parties' Claims**

This matter arises out of an insurance coverage dispute between Plaintiffs OneBeacon America Insurance Co. and affiliated companies ["OneBeacon"], and Defendant R.E. Kramig & Co., Inc. ["Kramig"], an insulation contractor which Plaintiffs insured under liability policies issued from approximately 1962 through 1985. Beginning in approximately 1994, OneBeacon engaged the Thompson Hine law firm to represent Defendant Kramig, as well as other parties insured by OneBeacon, in defense of asbestos personal injury liability claims. Christopher Bechhold, Esq., a partner in the firm's Cincinnati office, was the attorney to whom such representation was assigned.

By complaint dated May 7, 2007, OneBeacon instituted this action against Defendant Kramig and other insurance carriers providing excess coverage to Kramig, seeking a declaratory judgment that OneBeacon has exhausted its coverage limits under the subject insurance polices, and is not liable for any future asbestos claims against Defendant Kramig (Doc. 1). Attorney Bechhold and the Thompson Hine firm thereafter filed an answer and counterclaim on behalf of Defendant Kramig, asserting that OneBeacon's attempt to terminate its coverage obligations under the subject policies is premised upon an unintended and unreasonable interpretation of the policies' "single occurrence" provisions. (*See* Docs. 7, 18).

3

On June 29, 2007, OneBeacon filed its motion to disqualify Attorney Bechhold and the Thompson Hine firm from representing Defendant Kramig in this matter. (Doc. 9). OneBeacon asserts that disqualification is warranted because Bechhold and Thompson Hine formerly represented OneBeacon regarding "the same asbestos personal injury suits" involved herein, as well as "substantially related claims" against OneBeacon (*id.* at p. 6). In addition to claiming that Bechhold's representation is adverse to OneBeacon as both a former and current client, OneBeacon further argues that Bechhold is a potential material witness. (*Id.*).

Kramig counters that OneBeacon should not be permitted to interfere with Defendant's choice of counsel, urging that OneBeacon is neither a former nor current client of Thompson Hine, that "this insurance coverage dispute is not substantially related to any asbestos liability claim that Thompson Hine defended on behalf of OneBeacon's insureds," and that Attorney Bechhold is not a "necessary" witness under applicable ethics rules. (Doc. 17, p. 1). Kramig asserts that during Bechhold's representation, OneBeacon "retained separate coverage counsel" whenever coverage issues arose in connection with Kramig's defense under its OneBeacon policies (*id.*, p. 2), and suggests that neither Thompson Hine nor Bechhold "recognized any attorney-client relationship with OneBeacon." (*Id.*, p. 3).

4

The focus of OneBeacon's reply is on the issue of Bechhold's prior representation as "substantially related" to the present matter. (*See* Doc. 21). Following a motions hearing held on October 3, 2007 (*see* Doc. 31), the Court granted the parties time to conduct discovery related to that question, and set forth a schedule for additional briefs related to that narrow "substantial relationship" issue. (*See* Docs. 32, 33). Those supplemental memoranda (Docs. 35, 37, 39) also are before the Court.

**Legal Standard Applicable to Motions to Disqualify**

"The primary purpose behind the prohibition . . . against dual representation of clients with adverse interests is to ensure that confidences or secrets of a client imparted to an attorney in the course of their attorney-client relationship will not be revealed to an adverse party or used to the client's disadvantage." *Sarbey v. National City Bank*, 66 Ohio App. 3d 18, 26 (1990). The United States Court of Appeals for the Sixth Circuit has recognized that "the codified Rules of Professional Conduct" guide whether an attorney should be disqualified from representing a client based upon a conflict with the interests of a former client. *See National Union Fire Ins. Co. v. Alitor, Inc.*, 466 F.3d 456, 457 (6th Cir. 2006), *vacated in part on other grounds,* 472 F.3d 436 (6th Cir. 2007). In this district, the Ohio Rules of Professional Conduct govern such determinations. *See, e.g., Yates v. Dicks*, 209 F.R.D. 143, 150 (S.D. Ohio 2002); *see also* S.D. Ohio Civ. R. 83.3(f) [providing that the conduct of attorneys and the supervision of their conduct in this Court "shall be governed by

5

the Model Federal Rules of Disciplinary Enforcement," which provide that this Court abides by "the Code of Professional Responsibility adopted by the highest court of the state in which this Court sits" (*i.e.*, Ohio).].[1] "[H]owever, since questions of ethics in federal cases are ultimately questions of federal law, courts are guided by federal case law, the American Bar Association's comments to its Model Rules, and the policies underlying the particular rules at issue." *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp.2d 863, 866 (S.D. Ohio 2002)(Spiegel, J.)(citing *Manning v. Waring, Cox, James, Sklar, & Allen*, 849 F.2d 222, 258 (6th Cir. 1988)).

As to duties to former clients, the current version of the Ohio Rules provides that, absent informed written consent of the former client, "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Ohio R. Prof. Cond. 1.9(a) (2007); *see also Sarbey*, 66 Ohio App. 3d at 23. Use of the mandatory term "shall" requires disqualification when those circumstances are present. *See Nat'l Union*, 466 F.3d at 459; *see also Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). According to the relevant definitions, "substantial" as used in the Rules "denotes a matter of real importance or great consequence." Ohio R. Prof. Cond. 1.0(m). Additionally, a "substantially related matter" is defined as follows:

---

[1] The parties also agree that disqualification of counsel is subject to the provisions of the Ohio Rules of Professional Conduct. (*See, e.g.,* Docs. 35, 37).

6

>one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter.

Ohio R. Prof. Cond. 1.0(n).  "In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such representation."  Ohio R. Prof. Cond. 1.9, Comment (3).

The former client moving for disqualification bears the burden of proof, but "need show no more than that the matters embraced within the pending suit . . . are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client."  *Sarbey*, 66 Ohio App. 3d at 23-24 (quoting *T.C. Theatres Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953)).  **"The Court will assume that** during the course of the former representation **confidences were disclosed to the attorney** bearing on the subject matter of the representation."  *Id.* (emphasis added).

7

As a general rule, that presumption of disclosure of confidences is rebuttable, *id.* at 27 (citing *Cleveland v. Cleveland Elec. Illum. Co.*, 440 F. Supp. 193, 209 (N.D. Ohio), *aff'd*, 573 F.2d 1310 (6th Cir. 1977)), but "many courts have recognized [an] irrebuttable presumption rule" which "has not been uniformly applied." *Warpar Mfg. Corp. v. Ashland Oil, Inc.*, 606 F.Supp. 852, 857 (N.D. Ohio 1984). Despite recognizing that district courts within this Circuit have written conflicting opinions with respect to application of the irrebuttable presumption rule, the Sixth Circuit has not issued a clear directive with respect to its use, *see id.* (citing *General Elec. Co. v. Valeron Corp.*, 608 F.2d 265 (6th Cir. 1979), *Cleveland Elec. Illum. Co.*, 440 F. Supp. 193), except as to the presumption that confidences in the possession of an individual attorney will be shared with other members of his/her firm. *See Manning*, 849 F.2d at 225. In that instance, the Court has held that such presumption is rebuttable. *Id.*; *see also* 849 F.2d at 224 n.1 (acknowledging having "affirmed, without opinion," in *Cleveland Elec. Illum. Co.*, "*dictum* to the effect that the presumption of shared confidences should be rebuttable.").

Implicitly acknowledging the conflict inherent in an insurance company's payment of an attorney to represent an insured, the current Rules also make clear that in such circumstances, the <u>insured</u> rather than the insurance company is the client. *See* Ohio R. Prof. Cond. 1.8(f)(4). Under that construction, OneBeacon would <u>not</u> qualify as either a current or former client with regard to Bechhold's and Thompson Hines' representation of Kramig as insurance defense counsel retained

by OneBeacon to defend against asbestos liability claims asserted against Kramig as OneBeacon's insured.

OneBeacon, however, maintains that it IS a former Bechhold/Thompson Hine client as to "over 43 insurance coverage cases" in which Bechhold has represented OneBeacon since 1989. *See* Doc. 35, p. 2 and Exh. A. That prior insurance coverage representation provides the basis for OneBeacon's motion to disqualify.

## ANALYSIS

As OneBeacon aptly notes, three of the four elements set forth in Ohio R. Prof. Cond. 1.9(a) as requiring disqualification are not in dispute here. Kramig admits that OneBeacon is a former client of Kramig's present counsel, Mr. Bechhold, with regard to certain insurance coverage matters; that Kramig's interests in this matter are materially adverse to those of OneBeacon herein; and that OneBeacon has not consented to Mr. Bechhold's representation of Kramig. Whether such prior representation warrants disqualification, then, turns on the "substantially related" language of Ohio R. Prof. Cond. 1.9(a).

### "Substantially Related" in the Context of this Matter

As articulated by the parties, the outcome of this matter will turn on two primary issues: whether asbestos personal injury claims asserted by third parties against Defendant Kramig constitute a single occurrence under the terms of Kramig's insurance policies with Plaintiff, and if so, whether the per-occurrence limits specified in Kramig's policies apply once to the three-year policy term rather than

9

annually. Plaintiff maintains that Mr. Bechhold previously litigated those very issues on its behalf, in *Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co.*, 924 F.2d 633 (7th Cir. 1991), and in *Commercial Union Co. v. Roxborough Village Joint Venture*, 944 F. Supp 827 (D. Colo. 1996). Kramig counters that because the facts and legal issues involved in those two cases are distinguishable from those in this matter, Mr. Bechhold's prior representation therein was not "substantially related" to the pending suit.

The opinion in *Procter & Gamble* states that "the central issue on appeal [wa]s the proper method of calculating P & G's deductible under the Commercial umbrella policy," under "the applicable law . . . of Ohio." 924 F.2d at 637. Commercial Union was a predecessor to One Beacon (*see* Doc. 35, p. 7; Doc. 37, p. 5) in both that action and this one. Commercial Union's role in *Procter & Gamble* was as the issuer of both primary and umbrella policies implicated by product liability litigation brought against Procter & Gamble as the result of Toxic Shock Syndrome cases allegedly caused by the company's Rely tampons. According to that opinion:

> Approximately seventy-five to eighty claims fell within the Commercial umbrella policy period . . . P & G and Commercial disagreed about the proper deductible amount under the Commercial policy: P & G claimed that there was a $1 million deductible per policy year; Commercial maintained that the applicable deductible was $10 million per policy year and $1 million "per occurrence." The parties' central disagreement concerned the proper definition of "occurrence." Commercial contended that the Rely/Toxic claims and lawsuits constituted multiple occurrences, and the deductible of $10 million applied. In

10

> contrast, P & G argued that the Rely/Toxic claims were a single occurrence, and the applicable deductible was $1 million.

*Procter & Gamble*, 924 F.2d at 636-37.

Kramig asserts that "[t]he Seventh Circuit simplified the relationship between Procter & Gamble and its insurer for purposes of its opinion," and that "the policies in issue in this case bear no relationship to those in *Procter & Gamble*." (Doc. 37, pp. 6, 5). We have little doubt that both assertions are true. Clearly the potential liability exposure, insurance needs and bargaining power of a multi-national corporation of Procter & Gamble's size would differ greatly from those of a company such as Kramig, and the sophistication and complexity of their respective insurance plans could be expected to reflect those differences. In order to be "substantially related," however, instances of adverse representation need not share an identity of factual circumstances. Rather, any matter that involves the same "legal dispute" or in which there is "a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter" qualifies as "substantially related" for purposes of our analysis. *See* Ohio R. Prof. Cond. 1.0(n).

As OneBeacon correctly observes, a succinct description of the legal issue at the core of OneBeacon's legal position in this matter bears a striking similarity to a summary, albeit "simplified," of the controversy at issue in *Procter & Gamble*: both involve insurance disputes between insured and insurer arising out of product liability

11

personal injury actions, in which "[t]he parties' central disagreement concern[s] the proper definition of 'occurrence'" and they dispute whether certain specified limits on the insurer's liability apply per policy year or otherwise. *See id.*, 924 F.2d at 636-37. Given those parallels, the issues in these two cases cannot be characterized as mere "garden variety" personal injury cases with little relationship to one another. *Compare SST Castings, Inc.*, 250 F .Supp.2d at 868. Significant differences in product and in policy type, text, term and coverage notwithstanding, the two cases certainly appear to involve a dispute over essentially the same legal issue. Indeed, despite "entirely different" insurance policies involved in the prior and present representation at issue in *International Ins. Co. v. Certain Underwriter at Lloyd's of London*, 2001 WL 1681121 (S.D. Ohio 2001)(Smith, J.), the prospect of a "similar definition of 'occurrence'" helped to satisfy the "substantially related" test there. *Id.* at *4.

Similarly, *Roxborough* was an insurance coverage action involving a series of policies issued by Commercial Union and others, in which the parties disputed whether multiple claims constituted a single occurrence, and how per occurrence and aggregate policy limits should be applied. *See* 944 F. Supp. at 829, 832-33. Again, those disputed legal issues essentially mirror the legal issues before the Court in this case. As with *Procter & Gamble*, Kramig persuasively distinguishes *Roxborough* from the instant matter as to the factual circumstances present [property damage vs. personal injury, Colorado vs. Ohio law, single year vs. multi-

12

year policies, etc.].  Nevertheless, the similarity of the **legal** dispute in each is undeniable.  *See International Ins. Co.,* 2001 WL 1681121 at *4.

More compellingly, however, this particular case presents one of the rare instances in which direct evidence is available to show that "factual information . . .obtained in the prior representation of a client" actually was used in an attempt to "materially advance the position of another client in a subsequent matter."  *See* Ohio R. Prof. Cond. 1.0(n).  In a letter to OneBeacon's representative Cristy L. Bresson about this specific case, Mr. Bechhold states that the insurer's interpretation of the policies in this case is "inconsistent with the understanding and intent of former Commercial Union underwriters with whom I have worked in the past." (Doc. 35, Ex. B, p. 2).  Mr. Bechhold's self-serving affidavit offered in opposition to the motion to disqualify (Doc. 17, Exh. A) is simply insufficient to overcome the "appearance of impropriety" created by that letter.

Additionally, Kramig's implicit argument that the "understanding and intent" alluded to Mr. Bechhold's letter were not "confidential" information, but simply "knowledge of OneBeacon's 'playbook,'" at most (*see* Doc. 37, p. 23), would be more persuasive could Mr. Bechhold's letter not be interpreted to insinuate that his insider's knowledge of OneBeacon's inner workings should motivate OneBeacon to change its position in deference to his new client's adverse one.  Such factual information goes beyond the sort of "background information" and "knowledge of . . . strategy" deemed innocuous in *SST Castings*, 250 F. Supp.2d at 869, and treads

13

heavily into the realm of bearing out the "substantial risk," recognized in Ohio R. Prof. Cond. 1.0(n), that intimate familiarity with a client's approach to litigation, gained through representation in similar cases such as *Procter & Gamble* and *Roxborough,* later could be wielded as a weapon against that former client on behalf on a new, adverse one. As almost prophetically put in *International Ins. Co.*: "Who is to say that some detail from conversation with [the insurer's] representatives, although seemingly innocuous from today's standpoint, could not be used against [the same insurer] at some later point in this case?" 2001 WL 1681121 at *4. OneBeacon urges that precisely that has happened here, and we find that it has discharged its burden of showing "that the matters embraced within the pending suit . . . are substantially related to" matters wherein Mr Bechhold previously represented OneBeacon. *See Sarbey*, 66 Ohio App. 3d at 23-24.

For the foregoing reasons, this Court concludes that Ohio R. Prof. Cond. 1.9(a) precludes Mr. Bechhold, as OneBeacon's former counsel in other insurance coverage matters, from representing Defendant Kramig in this substantially related matter in which Kramig's interests are demonstrably and materially adverse to OneBeacon's interests. OneBeacon's motion to disqualify therefore is GRANTED as to Attorney Christopher Bechhold.

14

OneBeacon also moves, however, to disqualify not only Mr. Bechhold, but his entire law firm. The Court finds that such sweeping disqualification is unwarranted at this time. Decisions throughout this Circuit and beyond uniformly acknowledge that motions to disqualify counsel require courts to balance two conflicting considerations: the right of the client to select counsel of its choice vs. the public interest in requiring professional conduct by attorneys. *See, e.g.,, SST Castings*, 250 F. Supp.2d at 865; *Warpar Mfg.*, 606 F. Supp. at 857.

Being a corporation, Kramig must be represented by counsel to prosecute its claims in this case. This Court must protect Kramig's right to choose any counsel of its choice. Kramig may be interested in retaining the Thompson Hine law firm to represent it in this case considering its relationship with that law firm for over one year.

Kramig may choose any counsel it wishes to represent it except Bechhold. If its choice would be the Thompson Hine law firm and, if in keeping with the Ohio Rules of Professional Conduct, a lawyer from that firm accepted the representation and enters his or her appearance in this case as trial attorney representing Kramig, in the event plaintiff moves to disqualify new counsel, Kramig must be given the opportunity to rebut the presumption that confidences in the possession of Bechhold were shared with the counsel chosen by Kramig to represent it. See *Manning*, 849 F.2d at 225. Accordingly, OneBeacon's motion to disqualify the Thompson Hine law firm is **DENIED WITHOUT PREJUDICE**.

15

**IT THEREFORE IS ORDERED** that Plaintiff OneBeacon's motion to disqualify (Doc. 9) hereby is **GRANTED in part and DENIED in part**.  The motion is **GRANTED** to the extent that it seeks to disqualify Attorney Christopher Bechhold from further representation of Defendant Kramig in this matter, and is **DENIED** to the extent that it seeks to disqualify the Thompson Hine law firm from being considered by Defendant Kramig for its counsel.  Accordingly, Mr. Bechhold is **ORDERED** to refrain from hereafter representing Defendant Kramig in this matter.

This case is **STAYED** for a period of 60 days to permit Kramig to retain new counsel of its choice to represent it in this case.  Kramig shall notify this Court and cause its new counsel to enter his/her appearance in this case as soon as possible but no later than 60 days from the date of this Order.

This matter is continued on the docket of this Court.

**IT IS SO ORDERED**.

                                                  s/Herman J. Weber
                                        Herman J. Weber, Senior Judge
                                        United States District Court